KING, Circuit Judge,
dissenting:
With all respect for my distinguished colleagues, I would vacate the judgment below and remand for trial. In ruling on the summary judgment motion, the district court improperly disregarded admissible evidence which, viewed in the light most favorable to Cashion, creates a genuine dispute of material fact as to whether Cashion’s $2 million debt to the Bank of Asheville has been discharged.
As my friends emphasize, a Form 1099-C does not necessarily prove the discharge of a debt. It is of little moment, however, that IRS regulations specify that a Form 1099-C may be created “whether or not an actual discharge of indebtedness has occurred.” See 26 C.F.R. § 1.6050P-l(a). In the district court, Cashion presented the handwritten Form 1099-C, referencing the sum of more than $1.9 million, in opposition to the FDIC’s summary judgment motion. Contemporaneously therewith, Cashion filed his own affidavit asserting, inter alia, that “the Bank cancelled the *182 alleged debt,” and that “the Bank ... has acknowledged that the debt which is a subject of this lawsuit has been cancelled and assigned.” (J. A.32, 38.) Significantly, it was not Cashion’s burden to establish on the FDIC’s summary judgment motion that his debt to the Bank was discharged as a matter of law. Rather, Cashion was obliged to show merely that there is a genuine dispute of material fact.
In its reply memorandum, the FDIC asserted that: (1) the Form 1099-C constitutes inadmissible hearsay; (2) the Form 1099-C relates only to the collateral secured by the Note; and (3) the Form 1099-C is insufficient, on its own, to create a genuine dispute of material fact as to whether the underlying debt has been discharged. As the majority observes, the district court adopted all three of the FDIC’s arguments.
First, however, the Form 1099-C is admissible as a business record, pursuant to Rule 803(6) of the Federal Rules of Evidence. With its reply in support of summary judgment, the FDIC filed the affidavit of Sherry Martin, a Resolutions and Receiverships Specialist familiar with the books and records of the Bank. That affidavit establishes the provenance of the Bank’s records, relating that
[t]he books and records in question were made at or near the time of the matters therein recorded and were kept in the course of [the Bank’s] regularly conducted business activity, the regular practice of which was to keep such books and records.
J.A. 81. Martin’s affidavit specifically discusses the Form 1099-C, reciting that “[biased on the books and records of [the Bank], the[] [Form 1099-C] appear[s] to have been sent to Mr. Cashion by [the Bank.]” Id. at 82. These statements are all that is required by Rule 803(6) to render admissible the Form 1099-C.[1]
Second, in concluding that the Form 1099-C relates only to the collateral secured by the Note, the district court relied on the Form’s description of the debt as “Assignment of Promissory Notes.” J.A. 42. However, the Form 1099-C lists its relevant account number as 4436, the Bank’s account number for the loan and the Note. Thus, there are competing inferences to be resolved by a jury, not by a court on summary judgment.
Finally, contrary to the majority’s assertion, this case does not present the question of whether the Form 1099-C, standing alone, constitutes “sufficient evidence [on] which a jury could find in favor of Cash-ion.” Ante at 177. Put simply, the Form 1099-C cannot be considered in a vacuum. It was filed in the district court along with Cashion’s own affidavit, wherein he verifies that the Bank has cancelled his debt.
According to the majority, Cashion’s affidavit should be discounted because it “plainly represents” that the Form 1099-C provides the only basis for Cashion’s belief that the Bank discharged his debt. Ante at 181 n.10. Though the affidavit refers to the Form 1099-C, Cashion does not contend that his belief is based solely on the Form. Indeed, the Form provides no explanation (except its references to collateral and the account number associated with the Note) for why the Bank created and sent it to Cashion. In these circumstances, a reasonable jury would be entitled to infer that the Form 1099-C reflects an intent on the part of the Bank to discharge Cashion’s debt. Such an inference is supported by the origin of the Form 1099-C, i.e., the Bank itself, and the FDIC’s failure to show that the circum *183 stances of the Form’s existence “indicate [any] lack of trustworthiness.” Fed. R.Evid. 803(6)(E).[2]
The majority’s discussion of the divergent legal principles concerning the evi-dentiary weight properly accorded a Form 1099-C is, in my view, unnecessary, and the discussion simply reinforces the proposition that “ ‘reasonable minds could differ’ ” on this central point. Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir.2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (explaining that, on summary judgment, court must determine whether “there are any genuine factual issues that properly can be resolved ... in favor of either party”)). As a result, summary judgment should not be awarded.
Finally, I acknowledge that the handwritten Form 1099-C, viewed in the context of the substantial nature of the loan and the careful manner in which banks normally do business, could lead a reasonable factfinder to view this particular Form with suspicion. Indeed, if I were the factfinder, I would seriously question the legitimacy of a handwritten Form 1099-C purporting to cancel nearly $2 million of debt. But, as an appeals court, we do not sit in a factfinding capacity, and neither does a district court when resolving a summary judgment motion. Instead, the question of how the Form 1099-C should influence the outcome of this case is for a jury. Our proper course is simply to vacate and remand for trial.
I respectfully dissent.

. If the proper foundation is established, the Form 1099-C would likely also be admissible as the statement of an opposing party, pursuant to Federal Rule of Evidence 801(d)(2).

. In assessing the meaning of the Form’s reference to “Cancellation of Debt,” the jury would be entitled to view the cancellation in several ways, such as, by way of example, a discharge, a charge — off, a refinancing, a corrupt action by a Bank officer, or, perhaps, a gift by the Bank. Any of these plausible views of the record would give rise to an inference sufficient to defeat the FDIC’s summary judgment motion, because it bears the burden on summary judgment of showing the absence of a genuine dispute of material fact. See Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ("[0]n summary judgment the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.” (alterations and internal quotation marks omitted)).